#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TONYA McFADDEN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner for | : | |
| Social Security | : | No. 23-2432 |

### O P I N I O N

SCOTT W. REID                                                                                                     DATE:  January 9, 2024
UNITED STATES MAGISTRATE JUDGE

      Tonya McFadden brought this action under 42 U.S.C. § 405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI").  She has filed a Request for Review to which the Commissioner has responded.  As explained below, I will order the matter remanded for the agency to obtain expert testimony regarding her manipulative limitations.

I.    *Factual and Procedural Background*

      McFadden was born on January 27, 1977.  Record at 217.  She completed high school.  Record at 257.  She has no prior relevant work.  *Id*.  On September 14, 2018, she applied for SSI, asserting disability since June 1, 2013, caused by bilateral carpal tunnel syndrome ("CTS"), asthma, pain in the lumbar spine, pain in the left foot, high blood pressure, depression, and anxiety.  Record at 217, 256.

      McFadden's application for benefits was denied initially and upon reconsideration.  Record at 67, 86.  McFadden then requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  Record at 131, 132.  A hearing was held in this case on March 17, 2022.  Record

at 40.  On May 20, 2022, however, the ALJ issued a written decision denying benefits.  Record at 14.

The Appeals Court denied McFadden's request for review on May 1, 2023, permitting the ALJ's decision to stand as the final decision of the Commissioner of Social Security.  Record at 1.  McFadden then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision.  *Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  Each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii)  At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record.  *Id*.  The RFC assessment reflects the most an individual can still do, despite any limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

> (iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.    *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ found that McFadden suffered from the severe impairments of asthma, degenerative disc disease, cervical radiculopathy, bilateral CTS, depression, and post-traumatic stress disorder ("PTSD").  Record at 17.  She found that McFadden's hypertension, heart murmur, and issues with her left foot were non-severe.  *Id*.  In an endnote, the ALJ recognized that McFadden suffered from an anxiety disorder, but wrote:

> As a threshold matter, the undersigned is cognizant of the substantial overlap in symptomology between the different mental impairments, as well as the inherently subjective nature of mental diagnoses.  Accordingly, the claimant's psychological symptoms and their effect on functioning have been considered together, instead of separately, regardless of the diagnostic label attached.

Record at 35.

The ALJ concluded that McFadden retained the RFC to engage in light work, with the following limitations:

> [S]he can frequently crouch, stoop, kneel and climb ramps and stairs; occasionally crawl and never climb ladders, ropes, or scaffolds.  She can perform frequent reaching and

3

>handling. She can frequently handle and reach. [*sic* repetitive]. She can have occasional exposure to extremes of cold and heat, vibrations, fumes, odors, dusts, gases, and poor ventilation, … but no exposure to hazards, such as unprotected heights or unprotected moving mechanical parts. The claimant is limited to performing work that needs little or no judgment to do simple duties that may be learned on the job in a short period of time. To minimize stress and further accommodate deficits of concentration and attention, the work should also involve only occasional contact with the general public, only occasional interaction with coworkers and supervisors. It should involve few, if any, changes in the daily work duties, schedule, and location. Finally, the work should be goal, rather than production oriented, such that any production requirements can be made up by the end of the workday or shift.

Record at 20-21.

In her Request for Review, McFadden argues that the ALJ erred in failing to impose a limitation to only occasional handling, reaching, feeling, and fingering, due to her CTS. She also argues that the ALJ wrongly rejected the opinion of her treating psychotherapist as to her mental functional limitations. Finally, she maintains that the ALJ's failure to treat her anxiety disorder as a separate severe impairment resulted in an underinclusive RFC assessment.

IV. *Discussion*

    A. *Manipulative Limitations*

The ALJ acknowledged that McFadden's severe impairments of CTS and cervical degenerative disc disease caused her some manipulative limitations. She wrote:

>The undersigned … finds … that the record is consistent with manipulative restrictions. Orthopedic notes dated after the state agency medical consultants rendered their opinions show that the claimant reported having swelling in both hands (although none was noted on examination), intermittent numbness and tingling in both the median and ulnar distributions of the hands, and radicular-like symptoms of neck pain radiating into the hands. The undersigned acknowledges that examinations in August 2021 and January 2022 were generally unremarkable in the upper extremities except for positive Tinel's and Phalen's tests on the right. However, EMG testing during that time showed chronic cervical radiculopathy and bilateral carpal tunnel syndrome. Construing the evidence in a light most favorable to the claimant, the undersigned finds that she is further limited to only frequent reaching and handling.

Record at 26.

Thus, the ALJ recognized that, even after her March 2020 carpal release surgery on the left, McFadden continued to suffer from CTS, and that cervical radiculopathy was also contributing to her hand and wrist symptoms. She limited McFadden to frequent, as opposed to constant, reaching and handling. However, as McFadden points out, "frequent" means up to two-thirds of a workday. SSR 83-10. That is still a considerable amount of reaching and handling. As McFadden also points out, the ALJ did not impose a restriction in feeling and fingering. Thus, she limited McFadden in the use of her arms, but not of her hands.

There is no apparent medical or other evidence supporting the ALJ's decision in this regard. The evidence showing bilateral CTS and cervical radiculopathy is uncontradicted, and based on objective testing. In a note dated January 12, 2022, a few months before McFadden's hearing, her treating physician at Einstein Orthopedics described the testing, and recommended further surgery to address "moderate" CTS:

> EMG again reviewed from November 2021 which shows evidence of bilateral median mononeuropathy moderate in degree electrically, worse on the right. She also has evidence of mild chronic C5-7 radiculopathy. She had diagnostic carpal tunnel injections at her previous visit without relief. For this reason I am recommended a referral to pain management for further work-up of her cervical radiculopathy.
>
> I did obtain cervical films in the office today demonstrating degenerative disc disease. We discussed that there is [*sic*] further options of treatment for cervical radiculopathy including physical therapy as well as injections. She may be considered for cervical MRI as well.
>
> Once she gets a complete work-up regarding her cervical radiculopathy, I recommend a right carpal tunnel decompression.

Record at 1013.

Given these observations from McFadden's treating orthopedist, there is no particular reason to think that the largely normal physical examination results relied upon by the ALJ actually undermine McFadden's claims regarding her symptoms. Notably, positive Tinel's and

5

Phalen's tests, such as McFadden had on the right side, indicate nerve compression or damage. Http://www.ncbi.nim.nih.gov; https://my.clevelandclinic.org>25133-phalens-test.

McFadden did not have a consultative examination. Further, as the ALJ realized, the reviewing agency doctors issued their opinions before McFadden's most recent treatment for manipulative issues. Therefore, there is no medical evidence supporting a specific finding that McFadden was able to do frequent handling and lifting. Nor does the evidence surrounding McFadden's activities of daily living show that she actually used her arms and hands for up to two-thirds of her day.

In this light, McFadden's contention that she should be limited to only occasional handling, reaching, feeling and fingering, is facially plausible. "Occasional," in this context is defined as "very little" or up to 1/3 of the workday. SSR 83-10. However, this is not a lay decision to make. It is a medical decision. For that reason, I will order this case remanded to the state agency to obtain a report from an orthopedic specialist, who can review McFadden's contemporaneous records, and offer an opinion as to a what degree of functional limitation would be reasonably expected.

2.   *The Mental Functional Assessment*

On February 18, 2022, McFadden's therapist, Elizabeth Morris, MA, MHP, completed a Functional Assessment form in which she indicated that McFadden had a marked limitation in her ability to understand, remember, or apply information; a marked limitation in the ability to interact with others; and extreme limitations in concentration and the ability to adapt or manage herself. Record at 1095.

Out of 22 specific mental abilities, Ms. Morris indicated that McFadden was markedly limited in eleven.  Record at 1096.  She was "extremely" limited in four, including the ability to maintain socially appropriate behavior, and the ability to behave in an emotionally stable manner.  *Id*.  In all other areas, she was "moderately" limited.  *Id*.  Naftali Ortiz, M.D., McFadden's prescribing psychiatrist, co-signed the form.  *Id*.

The ALJ found this report to be unsupported by the available treatment notes, and concluded that it was unpersuasive.  Record at 26.  Prior to doing so, she wrote:  "Although Ms. Morris is not an acceptable medical source, her statement has been considered as medical opinion evidence."  *Id*.  This appears to be a reference to 20 C.F.R. §404.1502(a)(2), which defines only a therapist who is a licensed psychologist as an "acceptable medical source."

McFadden complains that, since Dr. Ortiz signed the functional assessment form, he adopted the findings therein, and there was no need to reject Ms. Morris as an "unacceptable medical source."  McFadden is correct, in that the report can be attributed to Dr. Ortiz, as a signatory.  However, this makes no difference to McFadden.  The ALJ plainly stated that she considered the form *as if* Ms. Morris had been an acceptable medical source under the regulations.  Therefore, Ms. Morris's status under 20 C.F.R. §404.1502(a)(2) was irrelevant to the ALJ's decision.

McFadden also criticizes the ALJ for failing to credit Ms. McFadden's report because "the record does not contain any treatment notes from Ms. Morris."  This is inaccurate.  Although the ALJ wrote that, she went on to evaluate the Functional Assessment with reference to Dr. Ortiz's notes:

> The undersigned finds that the record is consistent with no more than moderate limitation in any B criteria skills.  The record does not contain any treatment notes from Ms. Morris.  By contrast, psychiatric notes between July 2020 and March 2022 only once document regression when the claimant ran out of her medications.  Otherwise, she was

7

> repeatedly noted to be improving; at worse she remained stable, and her medication regimen was never changed.  Mini mental status examinations were usually unremarkable.  In fact, at recent psychiatric follow-ups in both February and March 2022, it was again noted that the claimant had improved.  She denied trauma symptoms.  She had normal speech and was goal-directed and euthymic.

Record at 27.  Thus, the absence of Ms. Morris's notes did not contribute to the ALJ's conclusion that the Functional Assessment was inconsistent with the other medical records.

What is more, the ALJ was accurate in this respect.  It does not appear that McFadden has ever had a mental hospitalization or partial hospitalization.  Record at 640 ("Interventions utilized to date:  only outpatient clinic"), *and see generally* 634-651, 1187-1639, 1648-1760.  Further, in the most recent treatment note, dated March 1, 2022, Dr. Ortiz wrote:  "Patient denied trauma symptoms."  Record at 1640.  He described her as "improved," and "euthymic", with normal, goal-directed speech.  *Id*.  A month earlier, on February 1, 2022, Dr. Ortiz similarly noted that McFadden "denied trauma symptoms; no insomnia."  Record at 1641.  Again, he wrote that she had normal, goal-directed speech, and was euthymic.  *Id*.

McFadden also denied depression, insomnia and/or trauma symptoms on January 7, 2022, December 2, 2022, November 4, 2021, October 7, 2021, September 8, 2021, and August 10, 2021.  Record at 1642-1647.  In his notes for all these dates, Dr. Ortiz described McFadden as "stable," except in August, when he called her "improved," and in each note he reported that her medication remained unchanged.  *Id*.  This clearly does not jibe with the Functional Assessment form's description of a person who was markedly and extremely limited in almost every area.

8

      3.     *The ALJ's Treatment of McFadden's Anxiety*

As above, the ALJ recognized that McFadden had been diagnosed with general anxiety disorder. Record at 35. However, instead of finding it to be a severe impairment, she wrote in an endnote that McFadden's anxiety would not be "considered separately" because of "the substantial overlap in symptomology between the different mental impairments" and "the inherently subjective nature of mental diagnoses." *Id*.

McFadden may be correct in arguing that the ALJ erred in this respect. It is one thing to "consider together" all of a claimant's psychological symptoms, but another thing entirely to fail to find a diagnosed disorder to be severe without either explaining why it is non-severe, or rejecting the diagnosis on the basis of opposing medical evidence.

Nevertheless, remand is not required where it would not affect the outcome of a case. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). In this case, the ALJ's questionable choice as to how to categorize the anxiety disorder did not prejudice McFadden. She argues that the ALJ's collapsing of her mental disorders "resulted in an underinclusive RFC which did not account for the full range of her limitations," specifically her inability to concentrate. *Plaintiff's Brief* at unpaginated ECF pages 11-12. Yet she does not point to medical records indicating an inability to concentrate in excess of that which was recognized by the ALJ.

On the contrary, McFadden's attention span was checked off as "adequate," and her thought processes were described as "goal directed" in a May 1, 2020, psychiatric evaluation. Record at 832. Nevertheless, the ALJ found McFadden to have a moderate limitation in concentration, relying upon the findings of the reviewing state agency psychological consultants. Record at 19-20.

9

Moreover, the ALJ accommodated this moderate limitation in concentration by limiting McFadden to "work that needs little or no judgment to do simple duties that may be learned on the job in a short period of time." Record at 21. To "further accommodate deficits of concentration and attention," the ALJ also provided that McFadden could do only work which involved occasional contact with the general public, and occasional interaction with coworkers and supervisors, and which involved "few, if any, changes in the daily work duties, schedule and location." *Id*. Moreover, the work would be goal oriented, rather than production oriented, "such that any production requirements can be made up by the end of the workday or shift."

On this record, there is no indication that the ALJ would have assessed a different RFC if she had considered McFadden's anxiety as a separate, severe, impairment. Therefore, this issue need not be reconsidered upon remand.

V. *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be granted in part and the matter remanded to the Agency to obtain a report from an orthopedist, or other medical expert able to opine on Plaintiff's manipulative limitations within the relevant period.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE